IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SPINRILLA, LLC, ) | |
| ) | |
| Plaintiff, ) | Civil Action File No.: |
| ) | |
| v. ) | _____ |
| ) | |
| RECORDING INDUSTRY ) | |
| ASSOCIATION OF ) | |
| AMERICA, INC., ) | |
| ) | |
| Defendant. ) | |

## **COMPLAINT**

Spinrilla, LLC files this Complaint for misrepresentation under 17 U.S.C. Section 512(f) against the Recording Industry Association of America ("RIAA" or "Defendant"), showing the Court as follows:

### **Introduction**

1.

Defendant is sending DMCA takedown notices some of which materially misrepresent that audio files uploaded by certain Spinrilla's users infringe sound recordings owned by RIAA's members. These unfounded takedown notices, in turn, cause Spinrilla damage to its business in at least injury to its goodwill and reputation.

2.

Each takedown notice received by Spinrilla triggers a series of tasks that Spinrilla personnel must perform, including reading the takedown notice, determining where in Spinrilla's system the allegedly infringing audio file resides, removing (when appropriate) the content, updating a list of repeat infringers and applying Spinrilla's repeat infringer policy to that list.

3.

False takedown notices needlessly waste Spinrilla's time, disrupts its personnel's work and puts at risk for terminating a user as a "repeat infringer" when in fact the user uploaded non-infringing content.

4.

More than any other entity in the world, Defendant has lobbied and bemoaned the DMCA takedown process, likening it to a game of whack-a-mole. The RIAA has referred to the takedown process as "frustrating" and "extremely burdensome." (*See* Letter from Defendant and others representing the "music community to the U.S. Copyright Office, located at <https://arstechnica.com/wp-content/uploads/2017/02/riaa.pdf> last visited Jan. 30, 2020).

## Parties

5.

Spinrilla is a Limited Liability Company organized under the laws of the State of Georgia.

6.

Defendant is a Corporation organized under the laws of the State of New York having a principal place of business at One Executive Boulevard Suite 75, Yonkers, New York, 10701 and may be served with process upon its registered agent, Corporation Service Company 80 State Street, Albany, New York, 12207.

7.

According to Defendant, Defendant "is the trade organization that supports and promotes the creative and financial vitality of major music companies." (<https://www.riaa.com/about-riaa/> last visited Jan. 30, 2020).

8.

According to Defendant "[n]early 85% of all legitimate recorded music produced and sold in the United States is created, manufactured, or distributed by RIAA members." (<https://www.riaa.com/about-riaa/> last visited Jan. 30, 2020). The "big four" record labels (Universal Music Group, Sony Music Entertainment, Warner Music Group and EMI Group) are all RIAA members.

9.

Defendant's members pay dues directly to Defendant.

10.

A full list of Defendant's members can be found at https://www.riaa.com/about-riaa/riaa-members/, last visited Jan. 30, 2020.

## Subject Matter Jurisdiction

11.

This case arises under the Copyright Act. (17 U.S.C. Section 101, *et seq.*). The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 (federal question jurisdiction) and 1338(a) (action arising under the Copyright Act).

## Personal Jurisdiction

12.

This Court has personal jurisdiction over Defendant because Defendant conducts business within the State of Georgia and within this judicial district. For example, Defendant's members include many Georgia based entities. (*See* Exhibit 1 for a representative sample of Defendant's Georgia based members).

13.

In addition, Defendant targets Georgia's hip-hop studios[1] to become members through its website (<https://www.riaa.com/about-riaa/become-an-riaa-member/>, last visited Jan. 30, 2020).

14.

Defendant is also subject to personal jurisdiction in this Court because Defendant has committed tortious injury to Spinrilla in this state caused by an act or omission (the false takedown notices) outside of Georgia and has regularly solicited business within the State of Georgia and derived substantial revenue from its collection of dues from its Georgia members, including but not limited to those members set forth in Exhibit 1.

**Venue**

15.

Venue is proper here under 28 U.S.C. Section 1391(b)(2) because all or a substantial part of the events giving rise to the claim occurred in this judicial district.

---

[1] Atlanta, Georgia, in this judicial district, is known as the "hip-hop capitol" and has numerous artists and recording studios.

## Facts

16.

Spinrilla and its anti-infringement measures

Spinrilla is a popular internet service provider for mixtape music. Spinrilla operates a website and mobile applications where independent, hip hop artists may upload content and users may download or stream that previously uploaded content.

17.

Spinrilla has a number of anti-infringement measures in place.

18.

To hold a Spinrilla account, users must agree to Spinrilla's Terms of Service, which grant Spinrilla the right to terminate a user's account with or without prior notice.

19.

Spinrilla does not allow every user to upload content. Instead, Spinrilla requires users wising to upload music to undergo an application process. Spinrilla users are only able to upload content to Spinrilla after they undergo this vetting process and are granted uploading privileges. Spinrilla does not approve every application it receives and only a small fraction of its users have upload rights.

20.

Another of Spinrilla's anti-infringement measures is the implementation and use of Audible Magic, a leading content recognition service.

21.

When a user uploads an audio file to Spinrilla's server, Audible Magic automatically scans the file. If Audible Magic determines the audio file is infringing, then Audible Magic blocks the file and prevents its publication (i.e., the file is not made publicly available). If Audible Magic does not block the audible file, it is published and other Spinrilla users may access the file.

22.

When a user with upload rights, uploads an audio file to Spinrilla, the user has complete control over the "metadata" associated with the file. The user, not Spinrilla, decides what to name the file and who is listed as the artist. Therefore, the file and/or artist name is not necessarily indicative of file content.

23.

Another anti-infringement measure implemented by Spinrilla is its repeat infringer policy.

24.

Under Spinrilla's repeat infringer policy, each copyright infringement notice against a user's account constitutes a 'strike.' After two strikes, the user's account is terminated.

25.

Spinrilla has a designated agent registered with the Copyright Office.

26.

A takedown notice sent to Spinrilla's designated agent constitutes notification under the DMCA, 17 U.S.C. Section 512.

27.

When Spinrilla receives a takedown notice, it reads the notice, determines where the allegedly infringing audio file resides in Spinrilla's system, listens to the audio file, removes (when appropriate) the content, updates its list of infringers, and applies Spinrilla's repeat infringer policy to that list.

28.

Spinrilla has terminated users accounts as a result of the Notices.

Defendant's "Mission"

29.

According to Defendant, Defendant "works to protect the intellectual property

. . . of artists and music labels." (<https://www.riaa.com/about-riaa/>, last visited Jan. 30, 2020).

30.

As part of its solicitation of new members, Defendant makes the following claim:

> Utilizing a variety of tactics and tools, our anti-piracy staff works tirelessly to protect the copyrights of our member labels. For example, our expert online piracy team constantly monitors the illegal trading of copyrighted songs on the Internet and ***sends tens of millions of "takedown notices"*** for unauthorized songs to the illegal sites and services themselves, as well as to search engines, ISPs, and a variety of other online intermediaries.

(https://www.riaa.com/about-riaa/become-an-riaa-member/, last visited Jan. 30, 2020) (emphasis added).

31.

Upon information and belief, one "tactic" employed by Defendant to enable it to send "tens of millions of takedown notices" is to employ text searching which cannot distinguish between infringing content and content that merely contains words that suggest infringement.

<u>Defendant's Takedown Notices to Spinrilla</u>

32.

Defendant has sent Spinrilla numerous takedown notices (Notices), including

notices sent in 2019 and 2020.

33.

These Notices demanded that Spinrilla remove numerous allegedly infringing audio files.

34.

The Notices also encouraged Spinrilla to "consider the widespread and repeated infringing nature of the site operator(s) conduct, and whether the site(s)' activities violate your terms of service and/or your company's repeat infringer policy."

35.

Defendant's Notices to Spinrilla typically accuse numerous audio files of infringement.

36.

Defendant, by the Notices, represents under penalty of perjury that it has a good faith belief that the referenced audio files infringe a copyright held by one of Defendant's members.

37.

Defendant, by the Notices, represented under penalty of perjury that all of the information contained in the Notices was accurate.

Spinrilla's Discovery of Material Misrepresentations and Notification to Defendant

38.

When Spinrilla investigated the audio files Defendant accused of infringement in the Notices, Spinrilla learned that some of the accused audio files are non-infringing.

39.

In September 2019, Spinrilla alerted Defendant to the inclusion of audio files that were not infringing, specifically audio files where the sound recording did not match the metadata (i.e., artiest and/or title listed on Spinrilla's site).

40.

Spinrilla requested that Defendant not request removal of content from Spinrilla's site based only on text searches.

41.

In response, Defendant denied that it requested removal of content from Spinrilla based only on text searches and asserted that the takedown notices sent to Spinrilla were confirmed by human ears before the notices were sent.

### Defendant's continuation of False TakeDown Notices

42.

Despite Spinrilla's informing Defendant of the false Notices, Defendant has continued to send Notices which include allegations of infringement as to audio files that Defendant knows do not infringe any copyrights and/or constitute fair use.

43.

For example, on January 16, 2020, Defendant sent a takedown notice that accused the audio file found at the following location of infringement:

> https://spinrilla.com/songs/2480250-big-sean-and-jhene-aiko-twenty88-2-minute-warning-ft-detailand-k-ci-jojo-chopped-and-screwed jhene aiko - 2 minute warning

44.

That accused audio file does not infringe the copyright in the sound file *2 Minute Warning*. In fact, that audio file is a mostly empty track (approximately 6 minutes) with the last 5 seconds or so jumbled audio that is not from the copyrighted *2 Minute Warning*. (Exhibit 2).

45.

Defendant is well aware that its technology and techniques produce many "false positives," yet Defendant continues to use these flawed procedures as the basis for its numerous takedown notices, including those to Spinrilla.

46.

At the time it sent the Notices, Defendant did not have a good faith belief that each audio file contained in the Notices infringed any of Defendant's member's copyrights.

47.

At least some of the material information contained in the Notices was not accurate.

48.

Defendant knew or should have known that not all of the material information contained in the Notices was accurate.

49.

As a result of Defendant's actions, Spinrilla was forced to expend time and resources, including costs incurred in investigations and attorneys' fees to respond to Defendant's false Notices, lost revenue, and suffered damage to its reputation and goodwill.

## COUNT I
## Misrepresentation (17 U.S.C. Section 512(f))

50.

Spinrilla repeats and incorporates by reference into Count I paragraphs 1 through 49 above and paragraphs 51 through 59 below as if fully set forth herein.

51.

Defendant knowingly materially misrepresents that audio files on Spinrilla's servers infringed Defendant's members copyrights, when in fact the audio files do not infringe.

52.

Defendant's knowing material misrepresentations were made under 17 U.S.C. Section 512.

53.

Defendant actually knew of the material falsity of its misrepresentations. If Defendant did not know before then, Defendant learned of the falsity of its misrepresentations at the latest when Spinrilla provided notice to Defendant in September 2019.

54.

In the alternative, Defendant should have known, if it had acted with reasonable care or diligence, or would have no substantial doubt had it been acting in good faith and not been reckless, that the audio files were not infringing.

55.

As a result of Defendant's knowing material misrepresentations, Spinrilla has been damaged in an amount to be proved at trial, including costs and attorneys' fees,

incurred as a result of the material misrepresentations pursuant to 17 U.S.C. Section 512(f).

56.

As a result of Defendant's acts, Spinrilla has suffered, is suffering, and will continue to suffer substantial damage to its business in the form of expenditure of time and resources, lost profits, and injury to its goodwill and reputation, all of which are not yet fully ascertainable.

57.

Defendant's wrongful acts have caused, and are causing, damage to Spinrilla, which damage cannot be accurately computed, and therefore, unless this Court restrains Defendant from further making knowingly material misrepresentations, Spinrilla will suffer irreparable damage for which there is no adequate remedy at law. Spinrilla is entitled to injunctive relief as a result of Defendant's acts.

## **Jury Demand**

58.

Spinrilla demands a trial by jury for all issues so triable.

## **Prayer for Relief**

59.

WHEREFORE, Spinrilla requests the following relief:

(A) Preliminarily and permanently enjoin and restrain Defendant from making knowingly material misrepresentations in takedown notices, including enjoining Defendant from sending a takedown notice based only on a text search without listening to the audio file and making a determination as to (1) whether the contents are infringing and (2) fair use;

(B) Award Spinrilla damages in an amount to be proven at trial;

(C) Award Spinrilla its attorneys' fees pursuant to 17 U.S.C. § 512(f), other portions of the Copyright Act, or otherwise allowable by law; and

(D) Award Spinrilla such other and further relief as the Court may deem just and proper.

Respectfully submitted this 1st day of February, 2020.

**LILENFELD PC**

/s/David M. Lilenfeld
David M. Lilenfeld
Georgia Bar No. 452399
Robin L. Gentry
Georgia Bar No. 289899
Kennington R. Groff
Georgia Bar No. 782901
Brian C. Huskey

Georgia Bar No. 543361

3379 Peachtree Road NE, Suite 980
Atlanta, Georgia 30326
Telephone: (404) 201-2520
Facsimile: (404) 393-9710
david@lilenfeld.com
robin@lilenfeld.com
kg@lilenfeld.com
bh@lilenfeld.com

*Attorneys for Plaintiff Spinrilla, LLC*