UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SPINRILLA, LLC,

      Plaintiff,

      v.

RECORDING INDUSTRY
ASSOCIATION OF AMERICA, INC.,

      Defendant.

Civil Action No.
1:20-CV-00492-AT

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.      Introduction......................................................................................1

II.     Factual Background ..........................................................................4

III.    Spinrilla's Complaint Should Be Dismissed Under Rule 12(b)(6). ...............6

        A.      Legal Standard ....................................................................6

        B.      Spinrilla's Allegations With Respect To The Single Audio File
                It Identifies Are Facially Deficient........................................8

                1.      Spinrilla Fails To Adequately Allege Knowledge On The
                        Part Of RIAA. .............................................................9

                2.      Spinrilla Fails To Allege That It Removed Or Disabled
                        Access To The Audio File At Issue Or Suffered Injury
                        As A Result. .............................................................11

        C.      Spinrilla Fails To Identify Any Other Allegedly Improper
                Takedown Notices. ...............................................................12

IV.     Alternatively, RIAA Is Entitled To Summary Judgment Under
        Rule 56. ...........................................................................................14

        A.      Legal Standard...................................................................15

        B.      The Record Establishes That RIAA's Takedown Request Was
                Based On A Good Faith Belief That The Track At Issue Was
                Infringing............................................................................15

        C.      RIAA's Subjective Good Faith Belief That The Audio File Was
                Infringing Defeats Spinrilla's Claim Under Section 512(f)...............18

V.      Conclusion ......................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
   790 F. Supp. 2d 1024 (N.D. Cal. 2011) ............................................................ 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... 13

*Atlantic Recording Corporation, et al. v. Spinrilla LLC and Jeffery Dylan
   Copeland*,
   1:17-cv-00431-AT (N.D. Ga.) ............................................................................ 2

*Avena v. Imperial Salon & Spa, Inc.*,
   740 F. App'x 679 (11th Cir. 2018) .................................................................... 6

*Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   945 F.3d 1150 (11th Cir. 2019) ......................................................................... 6

*Franklin v. Curry*,
   738 F.3d 1246 (11th Cir. 2013) ........................................................................ 13

*Herssein Law Grp. v. Reed Elsevier, Inc.*,
   594 F. App'x 606 (11th Cir. 2015) .................................................................... 13

*Hosseinzadeh v. Klein*,
   276 F. Supp. 3d 34 (S.D.N.Y. 2017) ........................................................... 18, 19

*Iroko Partners Ltd. v. Devace Integrated LLC*,
   No. 1:12-CV-01194-SCJ, 2014 WL 11716168 (N.D. Ga. Jan. 6, 2014) ............ 7

*Johnson v. New Destiny Christian Ctr. Church, Inc.*,
   No. 6:17-CV-710-ORL-37DCI, 2019 WL 1014245 (M.D. Fla. Mar. 4, 2019) . 18

*Menard v. CSX Transp., Inc.*,
   698 F.3d 40 (1st Cir. 2012) ............................................................................... 9

*Opinion Corp. v. Roca Labs, Inc.*,
   No. 8:15-CV-811-17AEP, 2016 WL 6824383 (M.D. Fla. Nov. 17, 2016)........11

*Ouellette v. Viacom Int'l, Inc.*,
   No. CV 10-133-M-DWM-JCL, 2012 WL 1435703 (D. Mont. Apr. 25, 2012)..8,
   9, 10

*Rossi v. Motion Picture Ass'n of Am. Inc.*,
   391 F.3d 1000 (9th Cir. 2004) ....................................................................18, 20

*Shaw v. City of Selma*,
   884 F.3d 1093 (11th Cir. 2018) ........................................................................15

*TD Bank, N.A. v. Hill*,
   No. 12-7188 (RBK/JS), 2015 WL 4523570 (D.N.J. July 27, 2015) ...................9

*White v. Lemma*,
   947 F.3d 1373 (11th Cir. 2020) .........................................................................6

## STATUTES

17 U.S.C. § 512(f) ...............................................................................passim

17 U.S.C § 512(k)(1)..................................................................................7

17 U.S.C. § 107..........................................................................................17

## OTHER AUTHORITIES

Fed. R. Civ. P. 11 ....................................................................................10

Fed. R. Civ. P. 12(b)(6)......................................................................passim

Fed. R. Civ. P. 12(d) ...............................................................................14

Fed. R. Civ. P. 56 ....................................................................................14

Defendant Recording Industry Association of America, Inc. ("RIAA"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its motion to dismiss or, in the alternative, for summary judgment.

## I.    Introduction

Spinrilla's Complaint must be dismissed because it fails to allege the bare minimum facts necessary to state a claim under Section 512(f) of the Digital Millennium Copyright Act ("DMCA").  As authorized by the DMCA, RIAA sends notices to online services, such as Spinrilla, that ask them to remove from their services audio recordings that infringe the copyrights of RIAA's members. Although RIAA has sent Spinrilla dozens of notices asking Spinrilla to take down over a thousand infringing files, this entire lawsuit is based on the inclusion in a takedown notice (that addressed multiple works) of a single audio file.  Spinrilla alleges that RIAA knowingly misrepresented that this single audio file was infringing.  But the allegation about RIAA's knowledge is insufficient to state a claim because it is based on nothing more than pure conjecture and does not satisfy the well-established pleading standards under Rule 12(b)(6).

More fundamentally, even taking all of Spinrilla's allegations as true and giving Spinrilla the benefit of all reasonable inferences, the Complaint fails to state a claim because it does not allege that Spinrilla ever removed or disabled access to

1

the sole audio file it identifies, or that Spinrilla suffered injury as a result of removing or disabling access to the file.  The statutory text and the case law are clear that such allegations are necessary elements to state a claim under Section 512(f).  These omissions are fatal to Spinrilla's case as a matter of law.

As this Court is well aware, Spinrilla is a defendant in an ongoing copyright infringement lawsuit brought by several of RIAA's member record companies.  *See Atlantic Recording Corporation, et al. v. Spinrilla LLC and Jeffery Dylan Copeland*, 1:17-cv-00431-AT (N.D. Ga.).  At the Court's hearing on those motions, the Court advised Spinrilla's founder that it had "real concerns . . . about [Defendants'] potential liability" and, further, that their safe harbor defense under the DMCA "is probably not going to stand."  Transcript of June 27, 2019 Motions Hearing Proceedings at 78:2-3, 4:1, Dkt. 365.

Spinrilla's new lawsuit is an obvious and baseless attempt to draw the Court's attention away from the views expressed by the Court at that hearing and from the pending motions for summary judgment in the original case, which demonstrate Spinrilla's persistent and flagrant pattern of facilitating and encouraging massive copyright infringement.  But Spinrilla's frivolous claim about a single audio file in this new lawsuit should have no bearing on the evidentiary record or the outcome of the record companies' case against Spinrilla.

2

Because Spinrilla fails to state a claim, its Complaint should be dismissed under Rule 12(b)(6). Nonetheless, RIAA is also moving in the alternative for summary judgment, in the event the Court believes it is necessary to consider additional facts in order to dismiss Spinrilla's Complaint. In support of the motion in the alternative for summary judgment, RIAA is submitting a declaration from RIAA's Vice President of Operations, Content Protection, Traci Crippen. Ms. Crippen's declaration conclusively establishes that RIAA is not liable under Section 512(f).

As Ms. Crippen explains, RIAA had, at a minimum, a good faith belief that the audio file Spinrilla identifies in its Complaint was infringing. RIAA came to this determination after both Ms. Crippen and an employee of the record company that owns the copyright personally listened to the relevant recording and concluded that the audio file contained unauthorized copies of portions of UMG's copyrighted sound recordings. Whether this determination was correct (or even reasonable) is ultimately immaterial; it is well settled that under Section 512(f), RIAA's *subjective* good faith belief that a file is infringing is itself exculpatory. Accordingly, RIAA respectfully submits that, even if the Court does not grant RIAA's motion to dismiss (which it should), it should consider the attached declaration and grant summary judgment in favor of RIAA.

3

## II.    Factual Background

The following facts are drawn from Spinrilla's Complaint and RIAA accepts them as true for purposes of its motion to dismiss under Rule 12(b)(6).  RIAA is a not-for-profit trade organization that represents the interests of the recording industry on behalf of its member record companies, who together create, manufacture, and/or distribute a substantial majority of all legitimate sound recordings produced and sold in the United States.  Compl. ¶¶ 7, 10.  One of RIAA's critical functions is to protect the intellectual property rights of its members.  *Id.* ¶ 29.  To this end, RIAA operates an online piracy team that, *inter alia*, monitors the unlawful performance of copyrighted recordings on various websites, and sends takedown notices when it discovers infringement.  *Id.* ¶ 30.

Spinrilla is an online platform that distributes and publicly performs "mixtape music" uploaded by users who create accounts on the service.  *Id.* ¶¶ 16, 19.  According to Spinrilla, "[w]hen Spinrilla receives a takedown notice, it reads the notice, determines where the allegedly infringing audio file resides in Spinrilla's system, listens to the audio file, removes (when appropriate) the content, updates its list of infringers, and applies Spinrilla's repeat infringer policy to that list."  *Id.* ¶ 27.

RIAA has sent Spinrilla numerous takedown notices.  *Id.* ¶ 32.  In particular, as relevant to this lawsuit, RIAA, on January 16, 2020, sent Spinrilla a takedown

notice that included the audio file (the "Audio File") found at the following hyperlinked location:

> https://spinrilla.com/songs/2480250-big-sean-and-jhene-aiko-twenty88-2-minute-warning-ft-detail-and-k-ci-jojo-chopped-and-screwed

*Id.* ¶ 43.[1]

Spinrilla alleges that this Audio File is not infringing. *Id.* at ¶ 44. Significantly—and dispositively—the Complaint does not allege that Spinrilla ever removed or disabled access to the file. As of this writing, the Audio File remains accessible on Spinrilla's website at the URL linked above. *See id.* ¶ 43. Spinrilla also does not allege that it suffered any injury as a result of removing or disabling access to the Audio File.

Spinrilla's Complaint does not identify any other allegedly non-infringing files listed in any of RIAA's "numerous" takedown notices. *Id.* ¶¶ 32-33.

---

[1] This URL, which was ultimately included in RIAA's takedown notice to Spinrilla, differs slightly from the URL included in Spinrilla's Complaint, which is: https://spinrilla.com/songs/2480250-big-sean-and-jhene-aikotwenty88-2-minute-warning-ft-detailand-k-ci-jojo-chopped-and-screwed jhene aiko - 2 minute warning. However, both URLs display the same webpage and thus the same Audio File is available to stream or download regardless of which URL the user visits.

**III.    Spinrilla's Complaint Should Be Dismissed Under Rule 12(b)(6).**

**A.    Legal Standard**

Dismissal under Rule 12(b)(6) is appropriate where a complaint fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6); *see also White v. Lemma*, 947 F.3d 1373, 1380 (11th Cir. 2020).  "A complaint is facially plausible when there is sufficient factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1158 (11th Cir. 2019) (quotation marks omitted).  To meet this standard, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 680 (11th Cir. 2018).  These allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  In evaluating a motion to dismiss under Rule 12(b)(6), "[t]he district court must accept the plaintiff's allegations as true but need not accept legal conclusions."  *White*, 947 F.3d at 1380.

Pursuant to the notice provision of the DMCA, "where there exists a good faith belief of unauthorized use of a copyrighted work, the owner of the exclusive right to that work or a party authorized to act on its behalf may provide a written

notice to the relevant Internet Service Provider ('ISP') identifying the copyrighted work and the infringing material and informing the ISP of the owner's good faith belief of unauthorized use." *Iroko Partners Ltd. v. Devace Integrated LLC*, No. 1:12-CV-01194-SCJ, 2014 WL 11716168, at *4 (N.D. Ga. Jan. 6, 2014).[2]

The statute also explicitly describes what an ISP publishing the content believed to be infringing must do upon receipt of such a notice if it is to be entitled to the safe harbors provided under the DMCA. Specifically, to be eligible for the safe harbors, the ISP "is bound to take down (i.e. remove or disable access to) the allegedly infringing material." *Id.*

Section 512(f) creates a remedy against a person or entity who knowingly abuses this process by making misrepresentations. To state a claim under Section 512(f), a plaintiff must allege that the sender of a takedown notice "knowingly materially misrepresent[ed] . . . that [the] material or activity is infringing," and that the plaintiff suffered injury "as the result of . . . relying upon such misrepresentation

---

[2] For purposes of Section 512(f), the DMCA defines an ISP as "a provider of online services or network access, or the operator of facilities therefor," which includes "an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received." 17 U.S.C § 512(k)(1)(A), (B). This definition includes websites such as Spinrilla. Compl. ¶ 16.

in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it."  17 U.S.C § 512(f).  While the Eleventh Circuit has yet to weigh in on this particular provision, other courts have made clear that the pleading standard under Section 512(f) is "high," in view of "the reality that copyright owners face an uphill battle to protect their copyrights on the internet."  *Ouellette v. Viacom Int'l, Inc.*, No. CV 10-133-M-DWM-JCL, 2012 WL 1435703, at *3 (D. Mont. Apr. 25, 2012) ("The Ninth Circuit has interpreted § 512(f) as setting a high bar for plaintiffs.").

### B.  Spinrilla's Allegations With Respect To The Single Audio File It Identifies Are Facially Deficient.

Spinrilla's Complaint is premised on the inclusion of a single Audio File in a takedown notice it received from RIAA.  Spinrilla alleges "[t]hat [the] accused audio file does not infringe the copyright in the sound file *2 Minute Warning*" and, instead, "that audio file is a mostly empty track (approximately 6 minutes) with the last 5 seconds or so jumbled audio that is not from the copyrighted *2 Minute Warning*." Compl. ¶ 44.

Spinrilla's Complaint fails to state a claim under Section 512(f).  First, Spinrilla does not adequately allege that RIAA had knowledge that the Audio File was not infringing.  Second, and more fundamentally, Spinrilla fails to allege that it removed or disabled access to the allegedly non-infringing Audio File.

8

### 1. Spinrilla Fails To Adequately Allege Knowledge On The Part Of RIAA.

To state a claim under Section 512(f), Spinrilla must "allege facts, at the pleading stage, that demonstrate that [RIAA] acted without a good-faith belief" that the Audio File was infringing. *Ouellette*, 2012 WL 1435703, at *3. Because the relevant standard is subjective, it is not enough to allege that RIAA *ought to have known* that the Audio File Spinrilla identifies in the Complaint was not infringing. *See TD Bank, N.A. v. Hill*, No. 12-7188 (RBK/JS), 2015 WL 4523570, at *21 (D.N.J. July 27, 2015) (appropriate inquiry is not "whether a copyright owner *should have known* that it was making a material representation"; rather, liability under Section 512(f) attaches only "where there is a demonstration of some *actual knowledge* of misrepresentation on the part of the copyright owner" (emphases in original; quotation marks omitted)).

Spinrilla does not allege any facts relating to RIAA's decision to include the Audio File in the relevant takedown notice. Instead, it relies on a self-serving allegation about a supposed "tactic" used by RIAA, pleaded on information and belief. Compl. ¶ 31. As an initial matter, this allegation should be rejected as purely speculative and unsupported. *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 (1st Cir. 2012) (observing that "'[i]nformation and belief' does not mean pure speculation" and concluding that if the plaintiff "had any facts to support [his

9

assertion" made on information and belief, "they should have been set forth"). Indeed, the words "information and belief" do not give Spinrilla "a license to . . . make claims . . . without any factual basis or justification," which is precisely what Spinrilla has done here.  Fed. R. Civ. P. 11 Advisory Committee's Note to 1993 Amendment.

Furthermore, Spinrilla pleads no facts showing that the takedown notice including the Audio File was the product of the "tactic" that Spinrilla alleges RIAA to have used.  Its general allegation that RIAA relies on a faulty text-searching procedure—an allegation that is entirely unsupported and that RIAA has expressly denied, as Spinrilla acknowledges, Compl. ¶ 41—is insufficient to satisfy the pleading requirements.  *See Ouellette*, 2012 WL 1435703, at *4 (rejecting 512(f) claim premised on the defendant's alleged history of using of "scanning software . . . to abuse the takedown process").

Spinrilla's conclusory allegations about RIAA's knowledge, based on nothing more than speculation and "information and belief," are insufficient to meet the pleading standard of Rule 12(b)(6).  Because the Complaint is utterly devoid of any factual allegations from which the Court could reasonably infer that RIAA made a knowing misrepresentation with respect to the sole Audio File Spinrilla identifies, it should be dismissed.

**2.**   **Spinrilla Fails To Allege That It Removed Or Disabled Access To The Audio File At Issue Or Suffered Injury As A Result.**

More fundamentally, even assuming that Spinrilla adequately alleged knowledge of a misrepresentation on the part of RIAA (which it has not), its claim under Section 512(f) should be dismissed for the straightforward reason that Spinrilla has failed to allege that it "remov[ed] or disabl[ed] access to the material or activity claimed to be infringing," which is a required element of a claim under Section 512(f).  17 U.S.C. § 512(f).

Simply put, to state a claim under Section 512(f), a plaintiff must allege that "a 'takedown' actually occurred."  *Opinion Corp. v. Roca Labs, Inc.*, No. 8:15-CV-811-17AEP, 2016 WL 6824383, at *3 (M.D. Fla. Nov. 17, 2016) (dismissing claim because, absent allegation of a takedown, "[p]laintiffs fail to allege the requisite injury under Section 512(f)"); *see also Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1029 (N.D. Cal. 2011) (dismissing "[S]ection 512 claim with prejudice because no takedown occurred").  Spinrilla makes no such allegation here (and, in fact, the Audio File remains accessible on Spinrilla's website).  For this reason alone, Spinrilla cannot satisfy all of the elements of a claim under Section 512(f), and the Complaint must be dismissed.

Furthermore, because Spinrilla has not alleged that it ever took down the allegedly non-infringing Audio File, it cannot and does not allege that it *suffered injury* "as the result of . . . relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it." 17 U.S.C. § 512(f). Spinrilla vaguely alleges that it suffered damages in the form of "costs incurred in investigations and attorneys' fees" and reputational injury, Compl. ¶ 49, but, even if Spinrilla incurred any such costs or suffered any such reputational injury, those alleged injuries are insufficient to state a claim because they do not stem from "removing or disabling access to" the allegedly non-infringing material, as required by Section 512(f). As Spinrilla has not alleged the facts required to establish that it removed the allegedly non-infringing material or that it suffered a cognizable injury as a result, its claim fails as a matter of law.

### C.  Spinrilla Fails To Identify Any Other Allegedly Improper Takedown Notices.

While the Complaint also contains vague allegations that "some" of the audio files that were the subject of takedown notices sent by RIAA are non-infringing, Compl. ¶ 38, the Complaint does not identify any such audio files other than the one discussed above. Indeed, the Complaint fails to refer to a single other recording by name or otherwise. Spinrilla's non-specific allegations about other takedown

notices fall far short of the pleading standard, which requires more than "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original; quotation marks omitted).[3]

Spinrilla makes conclusory allegations that "Defendant did not have a good faith belief that each audio file contained in the Notices infringed any of Defendant's member's copyrights," and that "Defendant knew or should have known that not all material information contained in the Notices was accurate." Compl. ¶¶ 46, 48.  But such boilerplate allegations are plainly insufficient to satisfy the pleading standard. Indeed, courts routinely reject these types of "formulaic recitation[s] of the elements of a cause of action."  *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quotation marks omitted) (holding that by alleging that the defendant "knew or should have known," the plaintiff "merely recited an element of a claim" and accordingly failed to state a claim to relief); *see also Herssein Law Grp. v. Reed Elsevier, Inc.*, 594 F. App'x 606, 608 (11th Cir. 2015) (rejecting conclusory allegations of bad faith).

---

[3] Nor can Spinrilla complain that it needs more information to know whether RIAA's takedown notices included other allegedly non-infringing files.  Spinrilla already knows precisely which files RIAA claims are infringing, because the takedown notices list them.

Because Spinrilla's Complaint lacks sufficient detail to put RIAA on notice as to any other alleged misrepresentations apart from the one relating to the single Audio File named in the Complaint—which fails independently for the reasons discussed above—it should be dismissed.

## IV.  Alternatively, RIAA Is Entitled To Summary Judgment Under Rule 56.

In the alternative, the Court should enter summary judgment for RIAA because the Declaration of Traci Crippen attached hereto establishes that RIAA had, at a minimum, a subjective good faith belief that the Audio File was infringing.[4]  As Ms. Crippen explains, RIAA took appropriate measures to confirm that the Audio File was infringing and was not a fair use, including listening to portions of the Audio File, determining that it contained portions of copyrighted sound recordings, and identifying it as part of a mixtape that included a track list that was nearly identical to that of a copyrighted album.  Because RIAA had a subjective good faith belief that the Audio File was infringing, there can be no liability under Section 512(f) as a matter of law.

---

[4] This Court has discretion under Rule 12(d) to consider materials outside of the pleadings and treat this motion as a motion for summary judgment under Rule 56(d). Fed. R. Civ. P. 12(d); *see also* Wright & Miller, Fed. Prac. & Proc. Civ. § 1366 (3d ed.).

### A.    Legal Standard

Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018). Where a movant makes this showing, the burden shifts to the non-movant to "come forward with specific facts" establishing that there is an issue for trial that is "both material and genuine." *Id.* A "material" fact is one that could affect the outcome of the case. *Id.* A "genuine" dispute of fact means that there is enough evidence that a reasonable jury could return a verdict for the non-movant. *Id.*

### B.    The Record Establishes That RIAA's Takedown Request Was Based On A Good Faith Belief That The Track At Issue Was Infringing.

The Audio File that is the subject of this lawsuit, "2 Minute Warning ft Detail and K-CI & JoJo (Chopped and Screwed)" by the artist Big Sean and Jhene Aiko (TWENTY88), is one of a number of audio files available for streaming and/or download on Spinrilla that RIAA member Universal Music Group ("UMG") identified as infringing UMG's copyrighted sound recordings. Defendant's Statement of Undisputed Material Facts in Support of Summary Judgment Against Plaintiff ("SUF") ¶ 6; Declaration of Traci Crippen in Support of Defendant's

Motion to Dismiss or, in the Alternative, for Summary Judgment ("Crippen Decl.")
¶ 7.

In particular, UMG advised RIAA that a UMG employee had listened to the
Audio File and determined that the opening section of it was an unauthorized copy
of a portion of the copyrighted sound recording "2 Minute Warning" by the hip hop
duo "TWENTY88," whose album "TWENTY88" is exclusively distributed by Def
Jam Recordings, one of UMG's family of record labels.  SUF ¶¶ 7, 10; Crippen Decl.
¶¶ 8, 11.  The UMG employee also determined that the final section of the file
contained a portion of the sound recording "Talk Show" by the same duo from the
same copyrighted album.  SUF ¶ 10; Crippen Decl. ¶ 11.  UMG asked RIAA to send
a takedown notice to Spinrilla for this and other UMG recordings.  SUF ¶ 6; Crippen
Decl. ¶ 7.

The Audio File appears on Spinrilla as part of a mixtape listed as a "chopped
and screwed" version of the album "TWENTY88" by the artist TWENTY88.  SUF
¶ 7; Crippen Decl. ¶ 8.  Indeed, the track lists for the mixtape and for the official
album "TWENTY88" are identical apart from the former's inclusion of the words
"chopped and screwed" and the substitution of the word "My" for the word "the" on
the third track.  SUF ¶ 7; Crippen Decl. ¶ 8; *compare* Ex. B to Crippen Decl. (mixtape
on Spinrilla), *with* Ex. C to Crippen Decl. (official release).  The remaining seven

files on that mixtape have been disabled and are not available on Spinrilla to stream or download.  SUF ¶ 8; Crippen Decl. ¶ 9.

The mixtape "TWENTY88 (Chopped and Screwed)" also includes a lightly edited, infringing version of the copyrighted album artwork for the album "TWENTY88."  SUF ¶ 9; Crippen Decl. ¶ 10; *compare* Ex. B to Crippen Decl. (mixtape artwork on Spinrilla), *with* Ex. C to Crippen Decl. (official album artwork). That copyrighted artwork appears on Spinrilla's website as well as in the metadata of the Audio File.  SUF ¶ 9; Crippen Decl. ¶ 10.

Upon receiving notice from UMG of the presence of the infringing Audio File on Spinrilla, Ms. Crippen personally listened to the file.  SUF ¶ 11; Crippen Decl. ¶ 12.  Ms. Crippen made a good faith determination that the file was infringing, and that it did not fall within the fair use exception to copyright infringement.  SUF ¶ 11; Crippen Decl. ¶ 12; *see also* 17 U.S.C. § 107.  Accordingly, on January 16, 2020, RIAA sent a takedown notice to Spinrilla requesting that the Audio File identified in the Complaint, along with 57 other infringing audio files, be removed from Spinrilla's platforms.  SUF ¶ 12; Crippen Decl. ¶ 13; Ex. D to Crippen Decl.; Compl. ¶ 43.

Spinrilla does not appear to have removed the Audio File and, as of the date of this Motion, the file remains accessible at the hyperlinked webpage indicated above and provided in the Complaint.  SUF ¶ 13; Crippen Decl. ¶ 14; Compl. ¶ 43.

### C.   RIAA's Subjective Good Faith Belief That The Audio File Was Infringing Defeats Spinrilla's Claim Under Section 512(f).

"[I]t is a complete defense to a claim under § 512(f) that the party issuing a takedown notice had a subjective good faith belief that the use in question was not authorized."  *Johnson v. New Destiny Christian Ctr. Church, Inc.*, No. 6:17-CV-710-ORL-37DCI, 2019 WL 1014245, at *4 (M.D. Fla. Mar. 4, 2019) (quotation marks omitted).  Indeed, there can be no liability under Section 512(f) where the copyright holder "subjectively believe[s] the identified material infringes their copyright, even if that belief is ultimately mistaken."  *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 44 (S.D.N.Y. 2017).  This is so even if that subjective belief was unreasonable.  *See, e.g.*, *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004) ("A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake.").

Ms. Crippen's Declaration conclusively establishes RIAA's subjective good faith belief that the Audio File was infringing.  Indeed, the Audio File *is in fact* infringing as it clearly contains audible portions of UMG's copyrighted sound

18

recordings without authorization.  But whether that is so is immaterial, as all that need be shown is that RIAA subjectively and in good faith believed that it was so. Before sending the takedown notice, Ms. Crippen was informed that a UMG employee listened to the Audio File and determined that it infringed copyrighted UMG sound recordings.  SUF ¶ 10; Crippen Decl. ¶ 11.  Ms. Crippen herself then listened to the Audio File and concluded it was infringing.  SUF ¶ 11; Crippen Decl. ¶ 12.  That conduct is sufficient to establish a subjective good faith belief under Section 512(f), regardless of whether that determination was right or wrong.  *See Hosseinzadeh*, 276 F. Supp. 3d at 44.

Moreover, the way the Audio File appeared on Spinrilla included other indicia of infringement.  The Audio File appeared on Spinrilla as part of a mixtape titled "TWENTY88 (Chopped and Screwed)," whose track titles, in sequence, are nearly identical to the track titles that appear on the commercially released album called "TWENTY88."  SUF ¶ 7; Crippen Decl. ¶ 8.  Access to each of the other recordings that appeared on this mixtape is disabled.  SUF ¶ 8; Crippen Decl. ¶ 9.  Additionally, the album artwork displayed on Spinrilla alongside the mixtape and contained in the metadata of the Audio File is an infringing, lightly edited version of the official copyrighted album artwork for the album "TWENTY88."  SUF ¶ 9; Crippen Decl.

19

¶ 10; *see also* 17 U.S.C. § 106(2) (granting to copyright owners the exclusive right "to prepare derivative works based upon the copyrighted work").

Courts have held that these types of markers of infringement support a finding that a copyright holder acted in good faith in seeking the removal of seemingly infringing material. For example, in *Rossi v. Motion Picture Association of America*, the Ninth Circuit held that the Motion Picture Association of America ("MPAA") acted in good faith when it sent takedown notices to the plaintiff based on text and graphics on the plaintiff's website that appeared to advertise that MPAA members' copyrighted movies were available for download (even though in fact they were not). 391 F.3d at 1005-06. The court rejected the plaintiff's argument that the defendant failed to reasonably investigate before sending a takedown notice, entering summary judgment for the MPAA because the MPAA had acted in good faith in relying on the representations on the plaintiff's website. *Id.* at 1003, 1005-06.

RIAA's case here is even stronger than the MPAA's was in *Rossi*. Here, RIAA's investigation of the particular mixtape at issue and the presentation of the mixtape featuring the Audio File on the Spinrilla platform amply supported RIAA's conclusion that the Audio File was an infringing version of a recording that appeared on the copyrighted album "TWENTY88." *See id.* at 1005-06. And unlike in *Rossi*— where the MPAA's employee did not attempt to download the allegedly infringing

20

material to confirm the infringement and relied on context clues alone—here, an RIAA employee actually listened to the Audio File (as did a UMG employee before her).  SUF ¶¶ 10-11; Crippen Decl. ¶¶ 11-12.  When she did, she discovered that it contained identifiable portions of copyrighted sound recordings from the "TWENTY88" album.  SUF ¶ 11; Crippen Decl. ¶ 12.

Because Ms. Crippen's Declaration leaves no doubt that RIAA acted in good faith in requesting the removal of the Audio File, the Court should enter judgment for RIAA as a matter of law.

## V.     Conclusion

For the foregoing reasons, RIAA respectfully requests that the Court dismiss Spinrilla's Complaint with prejudice or, in the alternative, enter summary judgment for RIAA.

This 30th day of March, 2020.          Respectfully submitted,

                                             /s/ James A. Lamberth

JENNER & BLOCK LLP          TROUTMAN SANDERS LLP

ANDREW H. BART          JAMES A. LAMBERTH
(*Pro Hac Vice* Application Pending)          Georgia Bar No. 431851
OLIVIA G. HOFFMAN          600 Peachtree Street, N.E.
(Admitted *Pro Hac Vice*)          Suite 3000, Bank of America Plaza
919 Third Avenue          Atlanta, GA 30308-2216
New York, NY 10022          Telephone: (404) 885-3362
Telephone: (212) 891-1600          Facsimile: (404) 962-6611
Facsimile: (212) 891-1699          james.lamberth@troutman.com
abart@jenner.com
ohoffman@jenner.com

## CERTIFICATE OF COUNSEL REGARDING FONT SIZE

I, James A. Lamberth, an attorney, hereby certify that the foregoing has been prepared with a font size and point selection (Times New Roman, 14 pt.) which is approved by the Court pursuant to Local Rules 5.1(C) and 7.1(D).

/s/ James A. Lamberth

## CERTIFICATE OF SERVICE

I, James A. Lamberth, an attorney, hereby certify that on this 30th day of March, 2020, Defendant's Brief In Support Of Defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment, was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send an electronic notification and a service copy of this filing to all counsel of record who have appeared in this matter.

/s/ James A. Lamberth