IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SPINRILLA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No.: |
| | ) | |
| v. | ) | 1:20-CV-0492-AT |
| | ) | |
| RECORDING INDUSTRY | ) | |
| ASSOCIATION OF | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## SPINRILLA, LLC'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Plaintiff Spinrilla, LLC ("Spinrilla") opposes Defendant Recording Industry Association of America, Inc.'s ("Defendant") Motion to Dismiss, or in the Alternative, for Summary Judgment (Dkt. 13) as follows:

## I.    Introduction

Defendant's anti-infringement is overzealous, as service providers – such as Spinrilla – are being asked by Defendant to remove content that is not infringing. Defendant and its members' dislike of the Digital Millennium Copyright Act's takedown notice process is notorious. They claim the process is unfair because it forces them into a never-ending game of whack-a-mole. But their dislike of the process doesn't mean they can ignore or abuse the process. Each of Defendant's takedown notices must still be prepared and sent in good faith.

## II.    Argument and Citation to Authorities[1]

### A. Spinrilla States a Claim for Violation of 17 U.S.C. Section 512(f)

Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Def. Mot., Dkt. 13). In its Motion, Defendant argues that Spinrilla does not state a claim under Section 512(f) of the Copyright Act because (1) Spinrilla failed to adequately plead that the RIAA knew that it was sending a false takedown notices and (2) that Spinrilla removed the

---

[1] Spinrilla sets forth separate factual backgrounds for each motion within the Argument Sections for those motions.

exemplary audio file included as Exhibit 2 in Spinrilla's Complaint (the "Audio File"). (Def. Br., Dkt. 13-1, at 8-11). Contrary to Defendant's arguments, the Complaint states a claim for misrepresentation regarding the single audio file Defendant focuses on. The Complaint also states a claim for the other takedown notices in suit for Defendant's knowing misrepresentations in 2019 and 2020.

     *i.*    *Facts alleged in the Complaint*

Spinrilla brought this action under 17 U.S.C. Section 512(f) after Defendant sent Spinrilla takedown notices that knowingly contained material misrepresentations that certain audio files infringe sound recordings owned by Defendant's members. (Complaint, Dkt. 1, at ¶ 1). As Spinrilla alleged in the Complaint, Defendant's false takedown notices caused damage to Spinrilla's business (most prominently, Spinrilla's goodwill) and required Spinrilla to expend time and resources, including costs incurred in investigations and attorneys' fees to respond to Defendant's false take down notices. (Complaint, Dkt. 1, at ¶¶ 1, 3, 49, 55-56). This is because, as alleged in the Complaint, each takedown notice received by Spinrilla triggers steps that Spinrilla personnel must perform, including reading the takedown notice, determining where the allegedly infringing audio file resides, removing content, updating Spinrilla's list of repeat infringers and applying Spinrilla's repeat infringer policy to that list. (Complaint, Dkt. 1, at ¶¶ 2, 27).

In 2019 and 2020, Defendant sent Spinrilla numerous takedown notices which

demanded that Spinrilla remove audio files containing allegedly infringing content. (Complaint, Dkt. 1, at ¶¶ 32-33). When Spinrilla investigated the accused audio files, Spinrilla learned that some of those files were not infringing. (Complaint, Dkt. 1, at ¶ 38). In September 2019, Spinrilla notified Defendant that some of its takedown notices listed audio files on Spinrilla that were not infringing. (Complaint, Dkt. 1, at ¶ 29). Specifically, as alleged in the Complaint, Spinrilla informed Defendant that the audio files on the Spinrilla platform did not match the metadata (*i.e.*, the name of the artist and/or the title of the song or album) associated with that audio file[2]. (Complaint, Dkt. 1, at ¶ 39). Because the metadata (name of artist and/or title of song) did not match the actual audio file, the claims that the audio file infringed a copyright held by the artist for the song data in the audio file was false. (Complaint, Dkt. 1 at ¶¶ 42, 45). Spinrilla asked that Defendant not request removal of content from Spinrilla based only on text searches of metadata and instead confirm infringement by "human ears" before Defendant sent more takedown notices. (Complaint, Dkt. 1 at ¶ 41). Despite that notice, Defendant has continued to send takedown notices which include allegations of infringement as to audio files that Defendant knows do not infringe any copyrights, constitute fair use, or both.

---

[2] An example was not given in the Complaint but Spinrilla gives one here to assist the Court. The listing (*i.e.*, metadata) associated with an audio file on Spinrilla may list Beyoncé as the artist. However, the audio file may only contain music by Independent Artist A, and not Beyoncé. In this instance, the metadata listed (*i.e.*, Beyoncé) does not match the content of the audio file.

(Complaint, Dkt. 1, at ¶ 42).

In fact, as alleged in the Complaint, Defendant is aware that the technology and techniques it uses to detect infringing audio files produce "false positive" results. (Complaint, Dkt. 1, at ¶ 45). Nevertheless, Defendant continues to use this flawed procedure for the takedown notices it sends to Spinrilla. (Complaint, Dkt. 1, at ¶ 45).

As part of its solicitation of new members, Defendant brags that it has sent "tens of millions" of takedown notices for unauthorized songs. (Complaint, Dkt. 1, at ¶ 30). One tactic that Defendant employees that allows it to send "tens of millions" of takedown notices searching a platform, such as Spinrilla's, for certain text (i.e., metadata). (Complaint, Dkt. 1 at ¶ 31). This text-based searching cannot distinguish between an audio file that actually infringes a record label's copyrighted sound recording and one that does not infringe because the metadata does not match the music contained in the audio file. (Complaint, Dkt. 1 at ¶ 31).

In its Complaint, Spinrilla included one example of a false allegation that Defendant sent to Spinrilla. (Complaint, Dkt. 1, at ¶¶ 43-44). On January 16, 2020, Defendant sent a takedown notice that accused the audio file located at https://spinrilla.com/songs/2480250-big-sean-and-jhene-aiko-twenty88-2-minute-warning-ft-detailand-k-ci-jojo-chopped-and-screwed jhene aiko - 2 minute warning (the "Audio File") of infringement. (Complaint, Dkt. 1, at ¶ 43-44). Although the metadata identifies the audio file as containing the song *2 Minute Warning* by Big

4

Sean and Jhene Aiko, the Audio File, in fact, is mostly an empty (*i.e.*, nothing more than white noise) track. (Complaint, Dkt. 1, at ¶¶ 43-44).

## ii.  *Motion to Dismiss Standard*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief" and provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). "[A] well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" (*Id.*, 550 U.S. at 544) (*citing Scheuer v. Rhodes*, 416 U.S. 232 (1974)). A claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." (*Twombly*, 550 U.S. at 555). "[D]etailed factual allegations' are not required." (*Anthony v. Concrete Supply Co., Inc.*, 241 F. Supp. 3d 1342, 1344 (N.D. Ga. 2017)).

The plaintiff need only give the defendant fair notice of the plaintiff's claim and for that claim, specific facts are not necessary. (*See Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). On a motion to dismiss, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." (*Philips Med. Sys. Nederland B.V. v. TEC Holdings, Inc.,* No. 1:17-CV-02864-LMM, 2018 WL 2009430, at *9 (N.D. Ga. Mar. 14, 2018)).

Section 512(f) of the Copyright Act "sets out a private cause of action for

anyone who is injured by a material representation that content or activity is infringing when it is not." (*Disney Enters., Inc. v. Hotfile Corp.*, No. 11–20427–CIV, 2013 WL 6336286, at *46 (S.D. Fla. Sept. 20, 2013)). "[T]to state a claim for misrepresentation under § 512(f) Plaintiffs must allege that Defendant "knowingly and materially misrepresent[ed]" that copyright infringement has occurred, that [plaintiff] "relied" on such misrepresentations, and that [plaintiff has] been "injured" as a result. (*Automattic Inc. v. Steiner,* 82 F. Supp. 3d 1011, 1026 (N.D. Cal. 2015)).

> iii.    *Spinrilla states a valid claim under 17 U.S.C. Section 512(f)*

Defendant's Motion to Dismiss (Dkt. 13) is premised on a misreading of the Complaint. According to Defendant, "Sprinrilla's Complaint is premised on the inclusion of a single Audio File in a takedown notice it received from RIAA." (Dkt. 13-1 at 8).  The Motion fails because (1) the Complaint includes more than the single Audio File and (2) even if this lawsuit involved only the Audio File, which it does not, Defendant relies on an overly strict reading of Section 512(f) and the case should be allowed to proceed.

> a. *Misrepresentations regarding the Audio File are not the sole basis of the Complaint*

First, the allegations in the Complaint are not limited to allegations regarding the single Audio File. The Audio File referenced by Defendant is one example referenced in the Complaint, where, as explained above, the metadata associated with the Audio File inaccurately lists *2 Minute Warning* as the name of the song on

the Audio File, but the Audio File is "a mostly empty track (approximately 6 minutes) with the last 5 seconds or so jumbled audio that is not from the copyrighted *2 Minute Warning.*" (Def. Br., Dkt. 13-1 at 8 citing Complaint (Dkt 1 at ¶ 44)).

The Complaint, however, involves more than the exemplary Audio File. Rather, the takedown notices in suit include the takedown notices (the "Notices") sent by Defendant to Spinrilla in 2019 and 2020 (Complaint, Dkt. 1 at ¶ 32) which demanded that Spinrilla remove "numerous allegedly infringing audio files."[3] (Complaint, Dkt. 1 at ¶ 33). Sprinrilla also alleged that "[w]hen Spinrilla investigated the audio files that Defendant accused of infringement in the Notices, Spinrilla learned that *some of the accused audio files are non-infringing.* (Complaint, Dkt. 1 at ¶ 38 (emphasis added)).

Paragraph 43 of the Complaint makes clear that the referenced Audio File is but one "*example*" of the false takedown notices sent by Defendant. In Paragraph 42, Spinrilla alleges that "[d]espite Spinrilla's informing Defendant of the false notices, Defendant has continued to send Notices which include allegations as to *audio files* that Defendant knows do not infringe any copyrights and/or constitute

---

[3] Should the Court determine that each audio file that Defendant knowingly materially represented was infringing in a takedown notice should be specifically referenced in the Complaint, Spinrilla requests leave to amend the Complaint because Defendant has sent other false takedown notices, two of which are discussed in Spinrilla's response to Defendant's Motion for Summary Judgment in Section B below.

fair use." (Complaint, Dkt. 1 at ¶ 42 (emphasis added)). Paragraph 51 also references multiple audio files: "Defendant knowingly materially misrepresents that *"audio files* on Sprinrilla's servers infringed Defendant's members *copyrights,* when in fact the *audio files* do not infringe." (Complaint, Dkt. 1 at ¶ 51 (emphasis added)).

Accordingly, Spinrilla has alleged that takedown notices sent in 2019 and 2020 are involved in this suit. When the allegations of the Complaint, as a whole, are analyzed, it is apparent that Spinrilla has stated a claim by giving Defendant's "fair notice of what the . . . claim is and the grounds upon which it rests." (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).

### b. *Spinrilla adequately alleges knowledge*

Defendant also argues that Spinrilla has failed to state a claim because "Sprinrilla does not adequately allege that RIAA had knowledge that the Audio File was not infringing." (Def. Br., Dkt. 13-1 at 8). Defendant is wrong.

The Complaint contains numerous allegations that Defendant had knowledge that it was sending false takedown notices. In fact, Spinrilla specifically alleged that at the time it sent Spinrilla the takedown notices at issue "Defendant did not have a good faith belief that each audio file contained in the Notices infringed any of Defendant's members copyrights" (Complaint, Dkt. 1 at ¶ 46) and that Defendant "knew or should have known that not all of the material information contained in the Notices was accurate." (Complaint, Dkt. 1 at ¶ 48; *see also id.* at ¶¶ 53-55).

8

Spinrilla did more than parrot the language of the statute. Instead, it gave *two* bases for this allegation. First, Spinrilla alleged that "Defendant is well aware that its technology and techniques produce many 'false positives,' yet Defendant continues to use these flawed procedures as the basis for its numerous takedown notices, including those to Spinrilla." (Complaint, Dkt. 1 at ¶ 45). Second, Spinrilla alleged that in September 2019, it "alerted Defendant to the inclusion of audio files that were not infringing, specifically audio files where the sound recording did not match the metadata (*i.e.*, artist and/or title listed on Spinrilla's site) and requested that Defendant not demand removal of content from Spinrilla's site based only on text searches." (Complaint, Dkt. 1 at ¶ 39-40). Despite this warning, Defendant continued to send false takedown notices. (*Id.,* at ¶¶ 32, 39-40, 42-44, 46-48, 51, 53).

These allegations are sufficient to plead Defendant's knowledge of the material misrepresentations contained in its false takedown notices. As a general rule, knowledge "may be alleged generally." (Federal Rule of Civil Procedure 9(b). And general knowledge pleadings have been sufficient to state a claim under Section 512(f). (*See Curtis v. Shinsachi Pharm. Inc.,* 45 F. Supp. 3d 1190, 1199 (C.D. Cal. 2014 (actual knowledge requirement is a state of mind that may be averred generally)). Because Spinrilla has adequately alleged knowledge the Motion to Dismiss (Dkt. 13) should be denied.

c. *Spinrilla adequately alleges it removed or disabled audio files*

Defendant next argues that the Complaint should be dismissed because "Spinrilla has failed to allege that it removed or disabled access to the material or activity claimed to be infringing . . . ." (Brief, Dkt. 13-1 at 15 (internal quotations and alterations omitted)). But, Spinrilla specifically alleged that it removed audio files in response to the Notices. (Complaint, Dkt. 1 at ¶ 27). Spirilla also alleged that it has terminated users for violation of its two-strike violation and that the Notices put Spinrilla at risk for terminating a user as a "repeat infringer" when in fact the user uploaded non-infringing content. (Complaint, Dkt. 1 at ¶¶ 3, 28). Spinrilla also alleged that the false takedown notices caused Spinrilla to suffer damage to its reputation and goodwill (Complaint, Dkt. 1 at ¶¶ 49, 56) which occurs when Spinrilla removes the allegedly infringing audio files.

Additionally, the Court should reject Defendant's improperly narrow construction of the Section 512(f)'s private cause of action provision. Defendant argues that a plaintiff necessarily fails to state a claim under 512(f) if it does not remove the falsely identified copyrighted material. (Def. Br., Dkt. 13-1 at 11).

Such a narrow interpretation of Section 512(f) however, would eliminate the relief expressly adopted by Congress to prevent misuse of the DMCA. Under Defendant's interpretation  it can escape Section 512(f) liability because Spinrilla expends the time and monetary resources to investigate those notices and prudently

decides not to remove clearly non-infringing files.[4] Such an interpretation would defeat Congress' intent to "deter knowingly false allegations to service providers in recognition that such misrepresentations are detrimental to the rights holders, services providers, and Internet users." (S. Rep. 105-109, May 11, 1998, at 49; *see also Sorrells v. U.S.,* 287 U.S. 435, 450 (1932) ("To construe statutes so as to avoid absurd or glaringly unjust results, foreign to the legislative purpose is, as we have seen, a traditional and appropriate function of the courts.")).

Even under Defendant's strained interpretation, Spinrilla should be allowed to seek an injunction to prevent future false takedowns, as it does here. (Complaint, Dkt. 1, at ¶¶ 56-57, 59(A)). Section 512(f) is entirely silent as to injunctive relief, referencing only "damages." Allowing a defendant to knowingly send false takedown notices with no liability whatsoever merely because the recipient does not remove non-infringing content would defeat the purpose of Section 512. Congress would not have passed a law that could be so easily exploited by organizations such as the RIAA that as part of their "mission" is to send millions of takedown notices to service providers such as Spinrilla.

In conclusion, Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure should be dismissed because Spinrilla stated a claim for relief under

---

[4] As discussed in Section B.iii.a below, there is evidence of record to show that Defendant has an interest in sending false takedown notices.

Section 512(f) of the Copyright Act.

## B. Defendant's Motion for Summary Judgment Should be Denied

In the alternative, Defendant has moved for summary judgment, arguing that because it "had a subjective good faith belief that the Audio File was infringing, there can be no liability under Section 512(f) as a matter of law." (Def. Br., Dkt. 13-1 at 14). Defendant relies on the Declaration of Traci Crippen (Dkt. 13-3) to support its assertion that it had a subjective good faith belief that the Audio File was infringing when it sent the takedown notice. (*Id.*).

As an initial matter, the Motion should be denied because, as discussed in Section A.iii.a, this case is not limited to the single Audio File that is the subject of Ms. Crippen's declaration and the Motion should be denied on that basis alone.

Independently, Defendant's Motion should be denied because there are material issues of fact regarding Defendant's good faith belief that the Audio File was infringing. Defendant's Motion filed *before* the start of discovery is premature because it relies on a self-serving declaration (Dkt. 13-3) of one of Defendant's employees without Spinrilla having the opportunity to depose that employee or inquire into other relevant factual issues through the discovery process. Yet even at this early stage, the evidence thus far reveals questions of fact that prevent summary judgment. The current record demonstrates that there are genuine disputes of material facts regarding whether Defendant, in fact, had a subjective good faith

belief that the Audio File was not infringing, despite Ms. Crippen's declaration. The credibility of Ms. Crippen's declaration (Dkt. 13-3) that must be tested since Defendant asserts those issues are dispositive of this case. Alternatively, Spinrilla should be afforded the opportunity to conduct discovery, including deposing Ms. Crippen (and testing her credibility) and investigating Defendant's procedures for determining whether an audio file is infringing as set forth in Spinrilla's concurrently filed Motion under Federal Rule of Civil Procedure 56(d).

i.   *Facts related to Defendant's Motion for Summary Judgment*

Spinrilla is a popular internet service provider for mixtape music. (Copeland Dec., at ¶ 2). Spinrilla operates a website and mobile applications where independent, hip hop artists may upload content and users may download or stream that previously uploaded content. (Copeland Dec., at ¶ 2). Spinrilla provides an audio distribution system for the purpose of providing a platform for the individual, emerging artist and college-aged students who make music or record songs to distribute it and share with their friends. (Copeland Dec., at ¶ 3).

Spinrilla has a robust non-infringement policy which includes numerous measures. (Copeland Dec., at ¶¶ 4-15). When Spinrilla receives a DMCA takedown notice from Defendant, Spinrilla reads the takedown notice, determines where in Spinrilla's system the allegedly infringing audio file resides, removes the content, updates a list of repeat infringers and applies Spinrilla's repeat infringer policy to

that list. (Copeland Dec., at ¶ 14).

Defendant "is the trade organization that supports and promotes the creative and financial vitality of major music companies."  (Groff Dec., at ¶ 3 and Exhibit H, <https://www.riaa.com/about-riaa/> last visited April 26, 2020). According to the RIAA, it "works to protect the intellectual property . . . of artists and music labels. (*Id.*). As part of its solicitation of new members, Defendant makes the following claim:

> Utilizing a variety of tactics and tools, our anti-piracy staff works tirelessly to protect the copyrights of our member labels. For example, our expert online piracy team constantly monitors the illegal trading of copyrighted songs on the Internet and ***sends tens of millions of "takedown notices"*** for unauthorized songs to the illegal sites and services themselves, as well as to search engines, ISPs, and a variety of other online intermediaries.

(Groff Dec., at ¶ 4 and Exhibit I, <https://www.riaa.com/about-riaa/become-an-riaa-member/>, last visited April 26, 2020 (emphasis added)). The RIAA has referred to the takedown process as "frustrating" and "extremely burdensome" and likened it to a game of "whack-a-mole". (Groff Dec., at ¶ 5 and Exhibit J, Letter from Defendant and others representing the music community to the U.S. Copyright Office).

In 2019 and 2020, the RIAA has sent Spinrilla at least 27 takedown notices demanding that Spinrilla remove audio files that Defendant allege infringe their members' sound recordings. (Copeland Dec., at ¶ 16, and Exhibit A).

On August 29, 2019, Defendant sent Spinrilla a takedown notice for the audio

14

file originally located at <https://spinrilla.com/songs/906598-kvng-zuzi-nav-myself>. (Copeland Dec., at ¶ 17 and Exhibits B & C).  That audio file contained metadata that identified the contents as the sound recording *Myself* by Nav. Although the metadata associated with the audio file indicated that the sound recording was *Myself* by Nav, the audio file did not contain a copy of *Myself* by Nav. Instead, the audio file contains an instrumental recording. (Copeland Dec., at ¶ 18). Spinrilla removed the audio file originally located at <https://spinrilla.com/songs/906598-kvng-zuzi-nav-myself> and Spinrilla's users no longer have access to that audio file. (Copeland Dec., at ¶ 19).

Following an investigation into the August 29, 2029 takedown notice, Spinrilla notified Defendant that Defendant was listing in its takedown notices audio files on Spinrilla based only on text-based searches. (Lilenfeld Dec., at ¶ 2 and Exhibit G). Later, on September 24, 2020, Spinrilla provided Defendant the *Myself* by Nav audio file where the metadata did not match the actual sound recording as an example of Defendant's false takedown notices. (Exhibit G). In both communications with Defendant, Spinrilla asked Defendant not to request removal of audio files based only on text-based searches. (Exhibit G).

Despite Spinrilla's request, Defendant has continued to send takedown notices where the metadata does not match the audio file on Spinrilla (although the metadata may match the copyrighted sound recording).

For example, Defendant's January 16, 2020 alleged infringement by the audio file located at:

> <  https://spinrilla.com/songs/2480250-big-sean-and-jhene-aiko-twenty88-2-minute-warning-ft-detailand-k-ci-jojo-chopped-and-screwed  jhene  aiko  -  2 minute warning >

(Copeland Dec., at ¶ 20, Exhibits D & E). That sound file is approximately 7 minutes long and contains mostly white noise. (Copeland Dec., at ¶¶ 21-22 and Exhibit E). It does not contain the song *2 Minute Warning.* (Exhibit E).

The January 16, 2020 takedown notice also included an audio filed located at < https://spinrilla.com/songs/2424582-jhene-aiko-the-vapors-ft-vince-staples >. (Copeland Dec. at ¶ 23, Exhibits D & F). The metadata identifies this audio file as a sound recording of *The Vapors* by Jhene Aiko, featuring Vince Staples. (Copeland Dec. at ¶ 24). The sound recording located at <https://spinrilla.com/songs/2424582-jhene-aiko-the-vapors-ft-vince-staples> is not a sound recording by Jhené Aiko, however. (Copeland Dec. at ¶ 25). Instead, it is a sound recording by a female artist named Ilham. (Copeland Dec. at ¶ 25). The accused sound recording originally located at <https://spinrilla.com/songs/2424582-jhene-aiko-the-vapors-ft-vince-staples> was removed from Spinrilla's service and Spinrilla's users no longer have access to that audio file. (Copeland Dec. at ¶ 26).

Defendant has been on notice that other indicia of infringement, such as the

names of songs and artists included in an audio files metadata, are unreliable at least through the case of *Disney Enterprises, Inc. v. Hotfile Corp.,* No. 11-20427-CIV, where Hotfile counterclaimed for Section 512(f) violations and claimed that the use of automatic, text-based searching was a violation of Section 512(f). (Exhibit K, *Disney Enterprises, Inc. v. Hotfile Corp.,* No. 11-20427-CIV, 2013 WL6336286 (S.D. Fl. Sept. 20, 2013)).

Additionally, RIAA members again overclaimed infringement in *Warner Records Inc., et al v. Charter Communications, Inc.*, Case No. 19-cv-00874-RBJ-MEH where Plaintiffs filed a "Motion to Amend Exhibits To Complaint" requesting leave to file an Amendment dropping numerous audio files originally accused of infringement and Charter has filed a counterclaim for violation of Section 512(f) (*See* Exhibit  L and Exhibit M, Dkt Nos. 111 and 147 in *Warner Records Inc., et al v. Charter Communications, Inc.*, Case No. 19-cv-00874-RBJ-MEH). In its Counterclaim, Charter alleges that the songs were dropped because Plaintiffs in that case "do not 'own and/or control in whole or in part the copyrights and/or exclusive rights' in the works. (Exhibit M, Dkt. 147, *Warner Records Inc., et al v. Charter Communications, Inc.*, Case No. 19-cv-00874-RBJ-MEH).

    ii.   *Motion for Summary Judgment standard*

Summary judgment is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (*Id.*) An issue of material fact "is not required to be resolved conclusively in favor of the party asserting its existence; rather all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." (*Id.*).

> iii.    There is a question of fact regarding Defendant's alleged good faith belief that the Audio File infringed

Defendant filed a self-serving declaration by Traci Crippen – before the opening of discovery – and Defendant claims that it "conclusively establishes RIAA's subject good faith belief that the Audio File was infringing." (Brief, Dkt. 13-1 at 18). That Declaration focuses exclusively on the Audio File (Exhibit D).

The Audio File by itself is sufficient to create a genuine dispute of material fact regarding the credibility of Ms. Crippen's declaration because a reasonable jury listening to that Audio File could conclude that no one could believe the file infringed the copyright in *2 Minute Warning* as discussed below. Other evidence of record (including Spinrilla's September 2019 emails and other lawsuits involving Section 512(f) claims) also raise a genuine dispute of material fact that Defendant knows that its takedown notices are rife with false accusations of infringement.

Knowing this, Defendant seeks to hide behind its "subjective good faith belief" that its accusations are meritorious. Defendant, of course, is motivated to claim good faith and will *never* admit that its anti-piracy tactics which employ text-based searching for words suggesting infringement is deeply flawed and knowingly results of hundreds (if not thousands) of false takedown notices.

a. *There is a question of fact regarding Ms. Crippen's alleged good faith belief that the Audio File infringes*

Ms. Crippen's declaration is not sufficient to find that Defendant is entitled to judgment as a matter of law. "As a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial." (*Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) *citing Morissette v. United States*, 342 U.S. 246, 274 (1952), *United States v. Gregory*, 730 F.2d 692, 702 (11th Cir. 1984)). A parties' intent is not a proper subject for summary judgment. (*Chanel*. at 1476 n. 6). Additionally, "[s]tatements of denial of bad faith, in and of themselves, saying 'it was not my intent,' are insufficient to demonstrate lack of bad faith intent." (*Victoria's Cyber Secret v. V secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1348-49 (S.D. Fla. 2001)).

Here, Ms. Crippen's Declaration fails to show Ms. Crippen's basis for deciding that the audio file is infringing. (Dkt. 13-3). Anyone can claim that they had a good faith belief, but a defendant in a 512(f) is also "required to show that it had a sufficient basis to form the required good faith belief that [the accused song]

19

infringed on its rights, and that its actions therefore complied with the notice and takedown requirements under the DMCA." (*Dudnikov v. MGA Entertainment Inc.*, 410 F. Supp. 2d 1010, 1013 (D. Colo. 2005)). Importantly, here, while Ms. Crippen includes many paragraphs regarding irrelevant information about *other* audio files, she includes only one (1) paragraph regarding the actual contents of the Audio File. (Crippen Dec., Dkt. 13-3 at ¶ 12). That bare bones statement declares only that she listened to the Audio File and determined that it was infringing and did not qualify as a fair use. (Crippen Dec., Dkt. 13-3 at ¶ 12). This is insufficient to carry Defendant's burden of showing that it is entitled to judgment as a matter of law.

Moreover, there is a jury question regarding the credibility of the RIAA's self-serving statement that Ms. Crippen formed a *good faith* belief that the audio file infringed on the copyright for *2 Minute Warning.* The audio file (Exhibit D) is largely blank with no sound. Ms. Crippen testified that she determined that "it infringed UMG's copyrights [and] that, in my belief, it did not qualify for the 'fair use' exception to copyright infringement." How can white noise infringe the copyright in *2 Minute Warning*?  In fact, Ms. Crippen did not identify *anything* in the Audio File upon which she made that determination. (Crippen Dec., Dkt. 13-3 at ¶ 12). And merely listening to the Audio File raises a question of fact regarding that good faith belief. After listening to the Audio File and Ms. Crippen's bare bones statement that she believed it infringed the copyright on *2 Minute Warning,* a

reasonable jury could determine that Ms. Crippen's testimony is not credible. Accordingly, Defendant's Motion for Summary Judgment should be denied.

Defendant's alleged reliance "on other indicia of infringement" in this case is misplaced. (Def. Br., Dkt. 13-1, at 19). Here, Defendant was on notice that these other indicia – including metadata associated with the Audio File at issue, album artwork, and other tracks uploaded at the same time – are not reliable indicators of infringement. Spinrilla specifically alerted Defendant to the unreliability of that information through an email to Defendant's general counsel. (Exhibit G). Additionally, Defendant has been on notice that such indicators are unreliable through other lawsuits filed against its member record companies.

For example, in *Warner Records Inc., et al v. Charter Communications, Inc.*, after accusing Charter of infringement of over *1000* sound recordings, Defendant's member record companies were forced to request leave to amend the complaint to drop over *400* sound recordings. (Exhibit K, Dkt. 111, Motion to Amend *Warner Records Inc., et al v. Charter Communications, Inc.*, Case No. 19-cv-00874-RBJ-MEH) Charter's Section 512(f) counterclaim alleges that this is because the Plaintiffs did not own the copyrights in the sound recordings. (Exhibit L, Dkt. 147, Counterclaim, *Warner Records,* Case No. 19-cv-00874-RBJ-MEH)

And, the defendant in *Hotfile*, successfully defeated the record companies' motion for summary judgment against its Section 512(f) counterclaim. (*Disney*

*Enterprises, Inc. v. Hotfile Corp.,* No. 11-20427-CIV, 2013 WL 6336286 (S.D. Fl. Sept. 20, 2013). In *Hotfile,* the defendant argued that there was a question of fact regarding "whether certain 'egregious attributes of Warner's system that might have prevented it from *acquiring* subjective knowledge . . . unjustly insulates Warner from liability for unreasonable mistakes." (*Id.* at *47). The court found that there was evidence in the record to "suggest that Warner intentionally targeted files it knew it had no right to remove" and regarding Warner's interest in an application of its takedown rights beyond works that it owns. (*Id.* at *48). The court went on to find that Warner's motive and other evidence was sufficient to raise a genuine dispute of material fact regarding violation of Section 512(f). (*Id.*).

Here, the evidence shows that Defendant has the same motive to overclaim infringement. Defendant solicits record labels (and hence dollars) through touting its anti-piracy activity, stressing that its staff "works tirelessly to protect the copyrights of our member labels." (Exhibit I). They also tout the number of takedown notices they send, bragging that they send "tens of millions of takedown notices." (*Id.*). At the same time, Defendant has heavily criticized the DMCA takedown process, asserting that it is "frustrating" and "extremely burdensome."  (Exhibit J).

This case is far different than the reported cases which Defendant relies upon to support its motion for summary judgment (or its motion to dismiss, or both). Defendant asserts that its case here is "even stronger" than the case in *Rossi v.*

*Motion Picture Association of America, Inc.,* 391 F.3d 1000 (9th Cir. 2004). (Def. Br., Dkt. 13-1, at 20). But, the credibility of the defendant was not an issue in *Rossi.* Rather, the plaintiff in *Rossi* argued that to form a good faith belief of infringement, "the copyright owner is required to conduct a reasonable investigation into the allegedly offending website." (*Rossi,* 391 F.3d at 1004). The Ninth Circuit affirmed the grant of summary judgment because Rossi did not raise a genuine dispute of material fact regarding the subjective good faith of the defendant. (*Id.* at 1005). Here, Spinrilla has raised such an issue of fact, even before conducting discovery into the RIAA's self-serving statement. Defendant also relies upon *Hosseinzadeh v. Klein,* 276 F. Supp. 3d 34 (S.D.N.Y. 2017). (Def. Br., Dkt. 13-1 at 18, 19). But, as in *Rossi,* the Section 512(f) claimant failed to "proffer any evidence" that defendants lacked a subjective good faith belief. (*Hosseinzadeh,* 276 F. Supp. 3d at 47).

### C. In the Alternative, Spinrilla is entitled to conduct discovery under Federal Rule of Civil Procedure 56(d)

Spinrilla has filed a separate 56d motion and brief but recaps its 56d argument here.  Pursuant to Federal Rule of Civil Procedure 56(d), when a nonmovant shows by declaration that, "for specified reasons, it cannot present facts essential to justify its opposition," the Court may, in its discretion, "allow time . . .  to take discovery." "Rule 56([d]) specifically addresses the question of summary judgment before discovery has taken place." (*Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989)). Spinrilla has set forth numerous facts that create a genuine

23

dispute of material fact preventing Defendant from obtaining summary judgment at this early stage. But, if the Court disagrees it should defer ruling on Defendant's Motion until thirty (30) days after the close of discovery in order to allow Spinrilla to obtain discovery. Only through discovery can Spinrilla present additional facts regarding Defendant's alleged good faith belief that each of the audio files contained in its Notices infringe sound recordings owned by Defendant's members.

Defendant claims that the Declaration of Traci Crippen "establishes" that Defendant had a subjective good faith belief that the "*2 Minute Warning*" Audio File that Defendant focuses on was infringing (Def. Br., Dkt. 13-1 at 14) even though discovery has not begun in this case.

A deposition of Traci Crippen is essential in this case to test the credibility of her statements as well as to gather additional essential facts not included in her Declaration. Again, how can Defendant have had a good faith believe that the Audio File containing over 6-minutes of blank, white noise infringed the sound recording in *2 Minute Warning* by Big Sean and Jhene Aiko. "The Eleventh Circuit 'has often noted that summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery' because 'the party opposing a motion for summary judgment has a right to challenge the affidavits…submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits.'" (*Castle v. Florida*, No. 6:18-

cv-243-Orl-41GJK, 2018 WL 3150259, at * 1 (M.D. Fla. June 14, 2018) *quoting Snook v. Trust Co. of Ga.*, 859 F.2d 865, 869 (11th Cir. 1988)). Moreover, in defending a summary judgment motion, a party should be allowed to take the deposition of an individual relied upon in the moving party's motion for summary judgment. (*Duvall v. Infinity Sales Grp., LLC*, No. 13-80768-CIV, 2014 U.S. Dist. LEXIS 186325, at *2-3 (S.D. Fla. Apr. 18, 2014)). Accordingly, if the Court does not deny Defendant's Motion for Summary Judgment based a genuine dispute of material facts, the Court should defer ruling on the Motion under Rule 56(d).

## III.   <u>Conclusion</u>

For the foregoing reasons, Spinrilla requests that this Court deny Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Alternatively, Spinrilla request that this Court defer Defendant's Motion for Summary Judgment to allow Spinrilla to conduct discovery, including the deposition of Traci Crippen so that it may present additional facts essential to Defendant's alleged good faith belief that audio files contained in the takedown notices infringed copyrights held by Defendant's members.

Respectfully submitted this 1st day of May, 2020.

**LILENFELD PC**

/s/David M. Lilenfeld
David M. Lilenfeld
Georgia Bar No. 452399
Robin L. Gentry

Georgia Bar No. 289899
Kennington R. Groff
Georgia Bar No. 782901

3379 Peachtree Road NE, Suite 980
Atlanta, Georgia 30326
Telephone: (404) 201-2520
Facsimile: (404) 393-9710
david@lilenfeld.com
robin@lilenfeld.com
kg@lilenfeld.com

*Attorneys for Plaintiff Spinrilla, LLC*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

I certify that the foregoing document is written in 14-point Times New Roman font in accordance with Local Rule 5.1.

*/s/David M. Lilenfeld*
David M. Lilenfeld

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SPINRILLA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No.: |
| | ) | |
| v. | ) | 1:20-CV-0492-AT |
| | ) | |
| RECORDING INDUSTRY | ) | |
| ASSOCIATION OF | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2020, the foregoing SPINRILLA, LLC'S OPPOSITION TO RECORDING INDUSTRY ASSOCIATION OF AMERICA'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT was filed electronically with the Court using the CM/ECF system, which action will cause automatic electronic notification of the filing from the Court to be served upon the following:

*Andrew H. Bart*          *Olivia G. Hoffman*          *James A. Lamberth*
*abart@jenner.com*   *ohoffman@jenner.com*   *James.lamberth@troutman.com*

Dated: May 1, 2020

*/s/ David M. Lilenfeld*
David M. Lilenfeld