IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SPINRILLA, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>RECORDING INDUSTRY<br>ASSOCIATION OF AMERICA, INC.,<br><br>    Defendant. | CIVIL ACTION NO.<br>1:20-cv-00492-AT |

# **ORDER**

This matter is before the Court on Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment [Doc. 13] and Plaintiff's Motion to Defer Ruling on Defendant's Motion for Summary Judgment [Doc. 24].

After three years of ongoing litigation in a suit brought by Atlantic Recording Corporation et al. that alleged widespread copyright infringement on the Spinrilla website and music streaming app, Spinrilla took the offensive and filed this lawsuit for damages under the Digital Millennium Copyright Act (DMCA). Spinrilla alleges that the Recording Industry Association of America (RIAA) sent Spinrilla takedown notices that knowingly contained material misrepresentations that certain audio files infringe sound recordings owned by Defendant's members. According to Spinrilla, these alleged false takedown notices caused damage to Spinrilla's business (most prominently, Spinrilla's goodwill) and required Spinrilla

to expend time and resources, including costs incurred in investigations and attorneys' fees to respond to Defendant's take down notices.

Defendant RIAA seeks dismissal of the Complaint. It argues that Spinrilla's Complaint fails to set forth each of the essential elements for a claim of misrepresentation under Section 512 of the DMCA. Alternatively, the RIAA seeks summary judgment in its favor, relying on the declaration of its Vice President of Operations and Content Protection attesting that the RIAA had a good faith belief that the alleged audio file at issue was infringing.

## I.     Discussion

Congress enacted the DMCA, 17 U.S.C. § 512, in part to address copyright concerns with online media platforms that host copyrighted content posted by users. Section 512(c) lays out a detailed process allowing a copyright owner who observes infringing content on a website to have the content taken down. The copyright owner must send written notification to the service provider ("takedown notice") identifying the infringing copyrighted work and asserting under penalty of perjury that the sender is the copyright owner and has a good faith belief that the video infringes the sender's copyrights. *See* 17 USC § 512(c)(3). To take advantage of the DMCA's "safe harbor" defense, the service provider must remove the material from its servers or face infringement liability itself. See 17 USC § 512(c)(1)(C).

Relevant to this action, the DMCA further provides that a copyright holder may be subject to liability for misuse of the takedown procedure. In particular, 17 U.S.C. § 512(f) provides:

> Any person who knowingly materially misrepresents under this section—
>
> (1) that material or activity is infringing, or
> (2) that material or activity was removed or disabled by mistake or misidentification,
>
> shall be liable for any damages, including costs and attorney's fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

To state a violation of the Section 512(f), the plaintiff must allege that the service provider took some action in reliance on the alleged misrepresentation in a takedown notice, namely removing or disabling access to the alleged infringing material. *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 704 (D. Md. 2011) ("Even assuming that Wilson acted knowingly, a fact not established by the record, his conduct did not violate the statute because it did not provoke a response from A1–Hosting and did not result in any harm to Plaintiffs . . . Accordingly, A1–Hosting could not and did not take any action in response to the DMCA notice, and there were no consequences to Plaintiffs as a result. Thus, Plaintiffs cannot prove that the service provider relied on the misrepresentation or that it incurred any damages as a result of the notice."); *Capitol Records, Inc. v.*

3

*MP3tunes, LLC*, 611 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2009) (holding that where MP3tunes did not respond to demand that it remove all links to any of plaintiffs' copyrighted recordings, it suffered no injury under Section 512(f) because it took no action other than filing an anticipatory lawsuit); *Opinion Corp. v. Roca Labs, Inc.*, Case No. 8:15–CV–811–17AEP, 2016 WL 6824383, at *3 (M.D. Fla. Nov. 17, 2016) (dismissing claims brought under DMCA where the complaint did not allege that the service provider removed or disabled access to the allegedly infringing material; finding that "absent some indication that a 'takedown' actually occurred, Plaintiffs fail to allege the requisite injury under Section 512(f), and thus fail to state a plausible claim under the DMCA"). *See also*, *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.* 790 F. Supp. 2d 1024, 1028-29 (N.D. Cal. 2011)("Amaretto is right that limiting suits for damages to those caused by an actual takedown is a less effective deterrent than allowing suits based merely on the filing of a false Takedown Notification. But the statute is unambiguous in entitling an alleged infringer to damages caused 'as the result of the service provider … removing or disabling access to the material ….' 17 U.S.C. § 512(c).")

Here, Spinrilla's Complaint makes the following allegations in support of its claim under Section 512(f) of the DMCA:

- Spinrilla is an internet service provider for mixtape music. Spinrilla operates a website and mobile applications where artists may upload content and users may download or stream that previously uploaded content. (Compl. ¶ 16.)

4

- Defendant RIAA is sending DMCA takedown notices, *some of which* materially misrepresent that audio files uploaded by certain Spinrilla's users infringe sound recordings owned by RIAA's members. These unfounded takedown notices, in turn, *cause* Spinrilla damage to its business in at least *injury to its goodwill and reputation*. (Compl. ¶ 1) (emphasis added).

- Each takedown notice received by Spinrilla triggers a series of tasks that Spinrilla personnel must perform, including reading the takedown notice, determining where in Spinrilla's system the allegedly infringing audio file resides, *removing (when appropriate)* the content, updating a list of repeat infringers and applying Spinrilla's repeat infringer policy to that list. (Compl. ¶ 2) (emphasis added).

- False takedown notices needlessly waste Spinrilla's time, disrupts it personnel's work and puts at risk for terminating a user as a "repeat infringer" when in fact the user uploaded non-infringing content. (Compl. ¶ 3.).

- When Spinrilla receives a takedown notice, it reads the notice, determines where the allegedly infringing audio file resides in Spinrilla's system, listens to the audio file, removes (when appropriate) the content, updates its list of infringers, and applies Spinrilla's repeat infringer policy to that list. (Compl. ¶ 27.)

- Spinrilla has terminated users accounts as a result of the Notices. (Compl. ¶ 28.)

- Defendant has sent Spinrilla numerous takedown notices (Notices), including notices sent in 2019 and 2020. (Compl. ¶ 32.)

- When Spinrilla investigated the audio files Defendant accused of infringement in the Notices, Spinrilla learned that some of the accused audio files are non-infringing. (Compl. ¶ 38.)

- Despite Spinrilla's informing Defendant of the false Notices, Defendant has continued to send Notices which include allegations of infringement as to audio files that Defendant knows do not infringe any copyrights and/or constitute fair use. (Compl. ¶ 42.)

- For example, on January 16, 2020, Defendant sent a takedown notice that accused the audio file found at the following location of infringement: https://spinrilla.com/songs/2480250‐big‐sean‐and‐jhene‐aikotwenty88‐2‐minute‐warning‐ft‐detailand‐k‐ci‐jojo‐chopped‐andscrewedjhene aiko‐2 minute warning. (Compl. ¶ 43.)

- The accused audio file does not infringe the copyright in the sound file 2 Minute Warning. In fact, that audio file is a mostly empty track (approximately 6 minutes) with the last 5 seconds or so jumbled audio that is not from the copyrighted 2 Minute Warning. (Compl. ¶ 45.)

- As a result of Defendant's actions, Spinrilla was forced to expend time and resources, including costs incurred in investigations and attorneys' fees to respond to Defendant's false Notices, lost revenue, and suffered damage to its reputation and goodwill. (Compl. ¶ 49.)

Although the Complaint generally references takedown notices sent in 2019 and 2020, Spinrilla only identifies a single audio file from a January 16, 2020 takedown notice that Defendant is alleged to have knowingly and falsely claimed as infringing. However, because Spinrilla contends that the audio file is not infringing, the Complaint does not allege that the audio file was removed or disabled as a result of the takedown notice. Rather, Spinrilla alleges it has been forced to spend time looking into each of the numerous takedown notices, resulting in "lost revenue" and damage to its reputation and goodwill. These are not the types of damages recoverable under Section 512(f). Even assuming Defendant acted knowingly in sending a takedown notice for an audio file that was not actually infringing of any of its members' copyrights, Spinrilla has failed to allege it took any of the actions involving removing or disabling access to the material required under Section 512(f) as necessary to state a claim under the DMCA for material misrepresentation and damages. *Ground Zero Museum Workshop*, 813 F. Supp. 2d at 704; *MP3tunes, LLC*, 611 F. Supp. 2d at 346–47; *Opinion Corp.*, 2016 WL 6824383, at *3; *Amaretto Ranch Breedables, LLC*, 790 F. Supp. 2d at 1028-29.

## II.     Conclusion

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss [Doc. 13] and **DENIES AS MOOT** Defendant's alternative Motion for Summary Judgment [Doc. 13] and Plaintiff's Motion to Defer Ruling pending discovery [Doc. 24].  The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED** this 13th day of January, 2021.

_____
**Honorable Amy Totenberg
United States District Judge**